UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELIPE VICINI LLUBERES, *et ano.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Misc. Case No. 08-0384 (RMC) |
| ) | |
| UNITED STATES DEPARTMENT OF STATE, ) | |
| ) | |
| Respondent. ) | |
| ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND
### IN SUPPORT OF RESPONDENT'S CROSS-MOTION TO QUASH,
### OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

By and through its undersigned counsel, Respondent United States Department of State ("Department," "State," or "Respondent"), respectfully submits this memorandum of points and authorities in opposition to Plaintiffs' Motion to Compel ("Motion") and in support of its Cross-Motion to Quash, or in the alternative, for a Protective Order ("Cross-Motion"). For the reasons stated below, the Court should deny Plaintiffs' Motion and quash the Subpoenas (defined below). Alternatively, the Court should enter a protective order limiting the testimony authorized by the Court.

### PRELIMINARY STATEMENT

In this matter, Felipe Vicini Lluberes and Juan Vicini Lluberes, Plaintiffs in the action underlying this dispute (*Lluberes, et ano. v. Uncommon Productions, LLC, et ano.*, Civ. A. No. 07-11623 (DPW) (D. Mass.)), seek to compel the deposition testimony of several third-party State Department officials, who indisputably did not assist in the production of the film, *The Price of Sugar*, upon which the underlying action is based. For a number of reasons, Plaintiffs' Motion should fail and the Court should quash the Subpoenas.

*First,* pursuant to 28 U.S.C. § 1783, the subpoenas for Michael Garuckis and David Searby, who resided abroad when the subpoenas were issued and served, are insufficient and were improperly served. That is, Plaintiffs failed to secure a court order issuing the subpoenas as required by 28 U.S.C. § 1783(a), and Plaintiffs failed to tender with service of such subpoenas the estimated travel and attendance expenses as required by subpart (b) of that statute.

*Second*, pursuant to Federal Rule of Civil Procedure ("Rule") 45(c)(3)(A)(ii), the subpoenas of Messrs. Garuckis and Searby should be quashed because neither of these individuals reside, work or regularly transact business within the District of Columbia or 100 miles thereof.[1]

*Third*, *and lastly*, under the particular facts of this matter, requiring third-party Department officials to provide testimony in Plaintiffs' private defamation lawsuit, when such officials had no involvement in any event or transaction upon which Plaintiffs' claims are based, is unduly burdensome.

Therefore, Plaintiffs' Motion should be denied, and the subpoenas (the "Subpoenas") issued to Michael J. Garuckis, David Searby, Alexander T. Bryan and Ambassador Hans H. Hertell should be quashed.[2] *Alternatively*, the Court should enter a protective order limiting the number, duration and topics for depositions of Department officials as described more fully below.

---

[1]     Furthermore, neither of these individuals resided, worked or transacted business in this District as of the date the subpoenas were served (Searby - on or about April 28, 2008; Garuckis - on or about May 9, 2008), or the date listed on the subpoenas for appearance at deposition (Searby - May 19, 2008; Garuckis -- May 27, 2008).

[2]     Plaintiffs originally also sought deposition testimony from Michael D. Puccetti. Plaintiffs, however, subsequently dropped that request and, thus, it is not before the Court either on the Motion or the Cross-Motion. Additionally, as noted below, the parties amicably resolved all issues concerning Plaintiffs' requests for documents.

## BACKGROUND

### A.     The Underlying Complaint.

The action underlying this matter is a lawsuit filed by Plaintiffs in the District of Massachusetts against a film production company and its principal alleging defamation.  *See* Complaint at 1, attached to Plaintiffs' Motion at Ex. A ("Motion Ex. A").  Specifically, Plaintiffs allege that Defendants' film, *The Price of Sugar* -- a documentary about living and job conditions on *bateyes*, or sugar plantations, in the Dominican Republic -- contains numerous malicious falsehoods and fabrications about Plaintiffs.  *See id.* at ¶ 12.

Notably, the Complaint does not mention the State Department or any of the subpoenaed individuals.  Moreover, the Complaint does not assert any claims against Father Christopher Hartley, who Plaintiffs now describe as "the Vicinis' main accuser and primary source for Defendant's defamatory conduct."  *See* Letter from Chew to State of 05/09/2008 at 7, Motion Ex. P; *see also* Motion at 7.[3]

### B.     The Subpoenas.

On or about April 28, 2008, Plaintiffs served the State Department with a subpoena addressed to Mr. Searby.  Subsequently, on or about May 9, 2008, Plaintiffs also served the State Department with subpoenas addressed to Messrs. Garuckis, Hertell, Bryan and Puccetti.  Although some of the Subpoenas contained slight variations, in essence they sought documents regarding (a) communications with Father Hartley; and (b) all communications regarding Plaintiffs.  *See* Bryan Subpoena, attached hereto at ("Attached") Ex. 1.  The Subpoenas also

---

[3]     Plaintiffs spend more than three pages of their Motion discussing their subpoena of Father Hartley. Notably, although this subpoena is irrelevant for purposes of this Motion and Cross-Motion, Judge Leon quashed the deposition portion of such subpoena presumably because Father Hartley, as with Messrs. Garuckis and Searby, resided and worked more than 100 miles outside the District of Columbia.  *See* Letter from Chew to State of 05/09/2008 at 5-6, Motion Ex. P

sought unbounded deposition testimony from each of the officials.  *See* Searby Subpoena, Motion Ex. N.

Notwithstanding their knowledge that at least two of the subpoenaed individuals resided more than 100 miles outside the District of Columbia in the Dominican Republic (*see* Letter from Chew to State of 05/09/2008 at 6-7, Motion Ex. P), Plaintiffs purported to serve the subpoenaed individuals by serving the State Department's Office of Legal Adviser, which pursuant to 22 C.F.R. § 172.3 is an agent for service of process for official capacity subpoenas of Department officials.  Indeed, it is undisputed that Messrs. Garuckis and Searby resided in the Dominican Republic at all times relevant to the subpoenas in this matter, and do not currently reside or work within 100 miles of this District. *See, supra,* at 1, n.1; Garuckis Decl. at ¶ 3-4, 6, Attached Ex. 2; Searby Decl. at ¶¶ 3-4, Attached Ex. 3.  Notably, before serving Messrs. Garuckis and Searby, Plaintiffs neither sought an order of the Court nor tendered estimated travel and attendance expenses.  *See* Garuckis Decl. at ¶ 10, Attached Ex. 2; Searby Decl. at ¶ 8, Attached Ex. 3.

**C.    The Parties' Meet and Confer Process.**

After a series of communications between the State Department and Plaintiffs in which the Department timely lodged its objections to the Subpoenas (*see* Letter from Hudak to Chew of 05/16/2008, Motion Ex. Q) and both parties compromised certain positions (*see* Letter from State to Chew of 06/06/2008, Motion Ex. S), the parties resolved all disputes concerning requested documents by specifically limiting the scope of such requests to: non-privileged email communications with Father Hartley and/or Ms. Noemi Mendez in the custody and possession of the subpoenaed individuals sent from September 1, 2006 to the present.  *See id.*[4]  As of July 3,

---

[4]    The State Department also specifically objected to searching disaster recovery or back-up systems, as it had no reason to believe that non-duplicative responsive documents would be located on such systems.  Indeed, the

2008, the Department has produced all responsive documents in the possession and/or custody of the subpoenaed individuals currently known to exist -- a total of 790 pages. *See* Letter from Hudak to Chew of 07/03/2008, Attached Ex. 4. Consequently, the only issue before the Court is whether Messrs. Searby, Garuckis, Bryan and/or Hertell should be compelled to provide deposition testimony.

D.     **Purported Relevance of the Requested Depositions.**

A central point of dispute between Plaintiffs and the Department is the relevance of the requested deposition testimony. Plaintiffs initially explained that the requested information was relevant as to (a) Father Hartley's credibility; and (b) the truth of statements made by Father Hartley to Defendants in the underlying action. *See* Letter from Chew to State of 05/09/2008 at 7, Motion Ex. P. Subsequently, Plaintiffs' counsel expressed that the information was relevant to show that Father Hartley was the sole source of information that precipitated Plaintiffs' inclusion in the State Department's Human Rights Report on the Dominican Republic. *See* Motion at 16-17. Plaintiffs also contend that because they were unable to secure deposition testimony of Father Hartley through a "serve at the feet" subpoena, the need for deposition testimony of State officials is increased. *See* Motion at 16.

As explained below, none of these rationales support a finding that the requested depositions are reasonably calculated to lead to the discovery of admissible evidence. Moreover, even if there is some marginal relevance to the deposition testimony, such miniscule relevance does not justify the significant burden of producing third-party government officials to provide testimony in connection with a private dispute among private parties -- especially when those officials have produced electronic and written communications on the same topic.

---

relevant disaster recovery systems only maintain emails for 90 days. *See* Letter from Hudak to Chew of 07/03/2008, Attached Ex. 4.

## ARGUMENT

### I.    PLAINTIFFS FAILED TO PROPERLY OBTAIN AND SERVE SUBPOENAS ON MESSRS. GARUCKIS AND SEARBY.

Plaintiffs failed to comply with the requirements of 28 U.S.C. § 1783 for their subpoenas of Messrs. Garuckis and Searby, who resided in the Dominican Republic at the time the subpoenas were issued and served.  Accordingly, such subpoenas should be quashed.

### A.    Plaintiffs Failed to Obtain a Requisite Court Order Before Issuing the Subpoenas.

Pursuant to the service provisions of Rule 45, which are set forth in subpart (b) of the Rule, service of subpoenas directed to United States nationals residing in a foreign country is governed by 28 U.S.C. § 1783.  *See* Fed. R. Civ. P. 45(b)(3).  Under 28 U.S.C. § 1783, a subpoena to a United States citizen residing abroad may only issue upon the order of a federal court.  *See* 28 U.S.C. § 1783(a) ("A court of the United States may order the issuance of a subpoena . . . of a nation or resident of the United States who is in a foreign country"); *see also Gardias v. San Jose State Univ.*, Civ. A. No. 04-4086 HRL, 2007 WL 1655586, at *1 (C.D. Cal. June 07, 2007) ("Generally, a party does not need a court order to subpoena witnesses. . . . However, it was suggested that [the deponent] may no longer be located in the United States.  If so, plaintiff is advised that special rules and procedures may apply as to [the deponent] (or any other third party who is located outside this country)."*), citing* 28 U.S.C. §§ 1781-83; *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001) ("A subpoena directed to a witness in a foreign country who is a national or resident of the United States shall issue under the circumstances and in the manner and be served as provided in Title 28 U.S.C. § 1783.").  Because Plaintiffs failed to obtain such a court order before issuing the subpoenas of Messrs. Garuckis and Searby the subpoenas should be quashed.

**B.      Plaintiffs Have Failed to Make a Requisite Showing for Such a Court Order.**

Even if Plaintiffs' failure to obtain a court order before issuing subpoenas to Messrs. Garuckis and Searby could be remedied after the fact -- which is impermissible pursuant to the plain text of the statute -- Plaintiffs have failed to make the requisite showing under the statute.

"28 U.S.C. § 1783 authorizes subpoenas of an *American* citizen or resident 'who is in a foreign country' only upon a showing 'that particular testimony or the production of the document or other thing by him is necessary in the interest of justice' and, in civil cases, 'that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or thing in any other manner.'" *Rosenruist-Gestao E Servicos LDA v. Virgin Enter. Ltd.*, 511 F.3d 437, 457 (4th Cir. 2007) (Wilkinson, J., dissenting) (emphasis in original); *see also United States v. Johnson*, 735 F.2d 1200, 1203 (9th Cir. 1984) (affirming district court's decision declining to subpoena a U.S. ambassador residing abroad under 28 U.S.C. § 1783(a)); *Hamilton v. Morgan*, 474 F.3d 854, 862, n.5 (6th Cir. 2007) (noting rule, declining to address issue as waived).

As an initial matter, Plaintiffs have failed to show that it is impossible to obtain the testimony of Messrs. Garuckis and Searby in an admissible form without the personal appearance of such individuals at a deposition in the United States.  Moreover, because Plaintiffs, for the reasons stated below, cannot overcome the Rules' more liberal undue burden hurdle, Plaintiffs clearly cannot fulfill the more rigorous "necessary in the interests of justice" test set forth in 28 U.S.C. § 1783(a).  *See generally Johnson*, 735 F.2d at 1203 (the statute "guarantee[s] not only that in proper cases a subpoena will [ ] be available, but also that burdens upon U.S. citizens and residers abroad will not be imposed without compelling reason") (citations omitted).

### C.     Plaintiffs Failed to Properly Tender Estimated Travel Expenses, and, Thus Service of the Subpoenas of Messrs. Garuckis and Searby Was Insufficient.

28 U.S.C. § 1783 further requires that when a subpoena is issued under the statute, the person serving the subpoena must tender estimated travel and attendance expenses at the time of service. *See* 28 U.S.C. § 1783(b). Plaintiffs have not once even offered to pay for the travel costs that Messrs. Garuckis and Searby would incur by traveling to Washington, D.C., let alone tendered the estimated costs when the subpoena was served. Accordingly, service of the subpoenas on Messrs. Garuckis and Searby was deficient, and such subpoenas should be quashed.[5]

## II.     THE SUBPOENAS OF MESSRS. GARUCKIS AND SEARBY SHOULD BE QUASHED UNDER RULE 45(C)(3)(A)(II).

Pursuant to Rule 45(c)(3)(A)(ii), the subpoenas of Messrs. Garuckis and Searby, non-parties to the underlying action, should be quashed. That Rule provides: "On timely motion, the issuing court *must* quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(3)(A)(ii) (emphasis added). This rule applies even if service was properly made pursuant to subpart (b) of Rule 45:

---

[5]     Plaintiffs' offer to take depositions in the Dominican Republic is simply irrelevant to this dispute. A United States District Court cannot compel a deposition in a foreign land. *See, e.g., Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 612 (S.D.N.Y. 2006) ("there is nothing in Rule 28(b) to suggest this Court has the power to *compel* a party to submit to oral examination in a foreign country") (emphasis in original). Indeed, in order to take a deposition in a foreign country, Plaintiffs must use the Hague Convention, other similar treaty, or letters rogatory. *See* Fed. R. Civ. P. 28(b) (rules governing depositions in foreign countries); *see also* 28 U.S.C. § 1783(b) (service of U.S. citizen in foreign country shall be effected by Rules provisions for service of persons in foreign countries); Fed. R. Civ. P. 4(f) (service rules for persons in foreign countries). In the case of the Dominican Republic, because it is not a signatory to any service treaty, Plaintiffs must use the lengthy letters rogatory process. *See, e.g.,* http://travel.state.gov/law/info/judicial/judicial_689.html (list of Hague Convention countries). Moreover, it is hornbook law that "because of the hostility of some foreign countries to allowing a deposition to be taken in their country, especially by notice or commission, or to lending assistance in the taking of a deposition, compliance with American court rules may not in all cases insure completion of a deposition abroad." 23 Am. Jur. 2d Depositions & Discovery § 18, *Taking a deposition under a commission or letter rogatory* (2008). Notably, Plaintiffs have offered no analysis of the Dominican Republic's position on pre-trial, civil depositions.

> Rule 45(c)(3)(A)(ii) provides specific circumstances under which a court must quash a subpoena, but it does not alter the requirements for proper service of a subpoena. Therefore, to compel attendance at trial, the person must be served with a subpoena in one of the places listed in Rule 45(b)(2) *and* not be subject to the protection in Rule 45(c)(3)(A)(ii), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse[.]

*Lyman v. St. Jude Medical S.C., Inc.*, Civ. A. No. 05-122, 2008 WL 2224352, at *12-13 (E.D. Wis. May 27, 2008) (emphasis in original) (internal citation and quotations omitted); *see also Mazloum v. Dist. of Columbia Metro. Police Dep't*, 248 F.R.D. 725, 725 (D.D.C. 2008) (Bates, J.) ("Rule 45(c)(3)(A)(ii) [ ] mandates that a court quash any subpoena served upon a non-party (or an employee of a party who is not an officer) that would require that witness to travel more than 100 miles 'from where that person resides, is employed or regularly transacts business in person.'"), *quoting* Fed. R. Civ. P. 45(c)(3)(A)(ii); *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) ("We observe here that non-party witnesses in the third-party action who are located in San Antonio are outside the Eastern District[ of Texas's] subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii)").

Accordingly, because Messrs. Garuckis and Searby reside and work more 100 miles outside the District of Columbia, Plaintiffs' deposition subpoenas of them should be quashed.

## III.    THE SUBPOENAS IMPOSE UNDUE BURDENS ON RESPONDENT.

The relevance, if any, of the deposition testimony sought by the Subpoenas is far outweighed by the burden to the Agency -- *i.e.*, the Subpoenas seek to impose an undue burden on the Department. Accordingly, Plaintiffs' Motion should be denied and the Subpoenas should be quashed pursuant to Rule 45(c)(3)(A)(iv).

A.    **Legal Standard for a Motion to Compel Third-Party Depositions of Government Officials.**

Although Plaintiffs correctly note that a third-party subpoena to a federal agency is afforded review under the Rules in the D.C. Circuit, Plaintiffs' argument that the Agency's *Touhy* factors are irrelevant in such a review is unsupported and illogical.  That is, the Agency's *Touhy* factors are relevant in the mix of considerations to measure the burden imposed by Subpoenas in determining whether they are unduly burdensome.

The D.C. Circuit's decision *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007), supports this position.  In *Watts*, after noting in dicta that third-party deposition subpoenas are reviewed under a Rules-based undue burden analysis, the D.C. Circuit went on to expressly note that a District Court must be sensitive to burdens placed upon third-parties: "The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."  *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007).  The D.C. Circuit further noted, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiries. *Id.*, *quoting Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (affirming denial of motion to compel).  The Court then listed several general considerations in evaluating third-party subpoenas, including whether (a) the discovery sought is unreasonably cumulative or duplicative, (b) the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; or (c) whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  *See id., quoting* Fed. R. Civ. P. 26(b)(1)-(2).

After discussing these general considerations of discovery of third-parties, the D.C. Circuit went on to specifically note that third-party subpoenas of government agencies invoke additional considerations:

> As the court in Exxon Shipping recognized, in other words, discovery under Rules 26 and 45 must properly accommodate "the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." [*Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994)]; *see also* [*Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197-98 (11th Cir. 1991)] (expected "onslaught of subpoenas" in similar litigation raised substantial concern about "cumulative impact" of individual subpoena) (internal quotation marks omitted); [*Davis Enters. v. EPA*, 877 F.2d 1181, 1187 (3d Cir. 1989) (agency had "legitimate concern with the potential cumulative effect" and "proliferation of testimony by its employees" that compliance with individual subpoena would entail).

*Watts*, 482 F.3d at 508. Accordingly, far from holding that agency *Touhy* regulations are irrelevant to the undue burden analysis, *Watts* itself recognizes that government agencies have unique concerns in responding to third-party subpoenas, which in this case are codified in the Department's *Touhy* regulations.

Indeed, the factors listed in the Department's *Touhy* regulations are consistent with the considerations noted in the Rules and in *Watts*, namely:

(1)    Whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case or matter in which the demand arose;

(2)    Whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information;

(3)    The public interest;

(4)    The need to conserve the time of Department employees for the conduct of official business;

(5)    The need to avoid spending the time and money of the United States for private purposes;

(6)    The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated;

(7)    Whether compliance would have an adverse effect on performance by the Department of its mission and duties; and

(8)    The need to avoid involving the Department in controversial issues not related to its mission.

22 C.F.R. § 172.8.[6]  When the burden to the Agency is analyzed under these factors, the considerations in the Rules and in *Watts*, and the marginal, if any, relevance of the requested information, it is clear that the Subpoenas are unduly burdensome.[7]

### B.    The Requested Deposition Testimony Is Irrelevant to the Underlying Action.

Plaintiffs' relevancy arguments are entirely based on the fallacy that Father Hartley's subjective beliefs are relevant to its claims of defamation against other parties, namely Defendants.  Moreover, even if this fallacy were to be true, Plaintiffs have failed to show how statements made to Department officials would be relevant or could lead to the discovery of relevant, admissible evidence in their claims against Defendants Uncommon Productions, LLC and its principal.

*First*, contrary to Plaintiffs' assertions (Motion at 15-16), none of their claims are based upon statements made by Father Hartley to State Department officials.  Indeed, all of Plaintiffs' defamation claims are premised upon statements published by Defendants in *The Price of Sugar*. *See* Complaint at ¶¶ 5-6, 39-58, Motion Ex. A.

---

[6]    Remarkably, Plaintiffs argue that the Department's *Touhy* regulations are irrelevant in the undue burden analysis, while also arguing that service of the Subpoenas under such regulations was proper.  *See* Motion at 13, 15, n. 18.

[7]    Far from boilerplate objections, the Agency explained in detail why it believed the Subpoenas to be unduly burdensome.  *See* Letter from State to Chew of 06/06/2008, Motion at Ex. S.  Plaintiffs' assertions to the contrary are simply distortions of the record.  *See* Motion at 17-18.

*Second*, the protections of the Rules as applied to the Department, a third-party to the underlying action, should not erode simply because Plaintiffs previously attempted to serve an insufficient subpoena "at the feet" of another third-party, Father Hartley. As with Messrs. Garuckis and Searby, Father Hartley did not reside, work or regularly transact business in this District or within 100 miles hereof. *See* Hartley Decl. at ¶¶ 2-3, *Hartley v. Lluberes, et ano.*, Misc. No. 08-0010 (RJL) (D.D.C.), Docket Entry No. 4. Consequently, Plaintiffs' subpoena of him was ripe to be quashed. Furthermore, based on the record available to the Department, it appears that Plaintiffs did not attempt to serve Father Hartley through other means such as letters rogatory. The failure of Plaintiffs' non-exhaustive efforts to obtain Father Hartley's testimony is simply insufficient to compel depositions of four State Department officials. *See Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000) (deposition subpoena to a second, non-involved third-party was unduly burdensome and unreasonable under Rule 45 when plaintiffs failed to take reasonable steps to secure the deposition testimony of a first-subpoenaed, more-involved third-party, even though such first-subpoenaed party "willfully disobeyed" prior subpoenas; sanctions against plaintiffs' attorney allowed for violating Rule 45(c)(1) obligation).

*Third*, simply because the documents reveal that Department officials and Father Hartley had communications concerning Plaintiffs and that Father Hartley promoted *The Price of Sugar* to such officials, does not mean that deposition testimony of the Department officials is relevant to the underlying dispute between Plaintiffs and Defendants. Again, Plaintiffs are suing Defendants, not Father Hartley and not the Department. Accordingly, the relevant inquiry is what words Defendants spoke or published, and what Defendants knew when they spoke or published those words;[8] not what two third-parties discussed. *See, e.g., Richards of Rockford,*

---

[8]      "To create liability for defamation there must be: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the

*Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 390-91 (N.D. Cal. 1976) (in a defamation action, denying as unduly burdensome motion to compel subpoena of third-party professor for statements made by defendant's employees to such professor).

*Fourth*, the credibility of Father Hartley judged in light of statements he made to State officials is simply irrelevant to, and unlikely to lead to admissible evidence concerning, Plaintiffs' defamation claims against Defendants. That is, as far as the Department is aware, there is nothing in the record that Defendants knew about or relied upon statements between the Department and Father Hartley in assessing the veracity of Father Hartley's contentions; or that Defendants knew or should have suspected that Father Hartley was the sole impetus for including Plaintiffs on the Department's Human Rights Reports. Absent such evidence, Plaintiffs' proposed depositions are mere fishing expeditions.

*Fifth, and lastly*, whether Father Hartley is a source of information relied upon by the Department in including Plaintiffs on the Department's Human Rights Reports on the Dominican Republic is a question that Plaintiffs will not be able to answer through the proposed depositions. What information the Department relied upon, what weight it gave to that information, and how it deliberated on such information in reaching its determination to include Plaintiffs on such reports, are exactly the topics protected by the deliberative process privilege. *See Canaday v. U.S. Citizenship & Immigration Servs.*, 545 F. Supp. 2d 113, 116-17 (D.D.C. 2008) (Collyer, J.) (concluding that the deliberative process privilege applied and noting, "[t]he deliberative process privilege exempts from disclosure documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"), *quoting NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Citizens for*

---

publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558 (1977).

*Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36,

43 (D.D.C. 2007) (Leon, J.) (concluding that the deliberative process privilege applied to prevent

disclosure of documents).[9]

Accordingly, the requested deposition testimony is irrelevant to the underlying action.

**C.    Depositions of the Subpoenaed Individuals Would Impose Substantial Burdens on the Department.**

Plaintiffs argue that the burdens on the Department in producing the subpoenaed

individuals for deposition are small.  *See* Motion at 18.  This argument is simply not supported

by the record.  The burden on the Department, as evident by applying the Agency's *Touhy*

factors, is substantial.

*First*, although Plaintiffs purport to limit the scope of the requested depositions to

communications between Father Hartley and/or Ms. Noemi Mendez, and the subpoenaed

officials, based upon admissions in the Motion, Plaintiffs clearly continue to seek what

information was considered by the Department and how much weight was given to such

information in the deliberative process concerning various Department reports.[10]  Accordingly,

the second *Touhy* factor (*see, supra,* at 11-12 for list of factors) reveals a burden to the Agency

and favors non-disclosure.

*Second*, while the Department agrees that a public interest (the third *Touhy* favor) exists

in the publication of true, versus false, statements, the Department fails to see how the requested

---

[9]    "The purpose of the deliberative process privilege is to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism and to protect against confusing the issues and misleading the public by the dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  *Citizens*, 514 F. Supp. 2d at 43 (internal quotations omitted).

[10]    Contrary to Plaintiffs assertions, the Department does not assert that the deliberative process privilege is a complete bar to the requested depositions.  Rather, given Plaintiffs' stated purpose in requesting depositions, it is a factor that increases the burden upon the Department, a federal agency, and decreases the relevance of the depositions, as Plaintiffs' purpose will not be realized.

information is at all relevant to this purpose as described above.  Indeed, the testimony sought by Plaintiffs -- *i.e.*, communications with Father Hartley -- does not tend to show that statements in *The Price of Sugar* are false or true.

*Third,* given that the Agency has the needs (a) to conserve the time of Department officials (the fourth *Touhy* facor), (b) to avoid spending time and money of the United States for private purposes (the fifth *Touhy* factor),[11] and (c) to maintain impartiality between private litigants in cases where a substantial government interest is not implicated (the sixth *Touhy* factor), compelling depositions in this matter would impose substantial burdens on the Agency. It is undisputed that the underlying action is a private dispute between private parties.  Further, the record clearly shows that neither the Department nor its officials had any direct involvement in the creation or publication of the alleged defamatory statements contained in *The Price of Sugar*.  Accordingly, these factors reveal a recognized burden on the Department if it were to be compelled to produce the subpoenaed individuals for depositions.  *See, e.g., COMSTAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999) ("neither FOIA nor a third-party subpoena will provide the private litigant with guaranteed access, at public expense, to the testimonial evidence of agency employees"); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (burdens on agencies in responding to third-party subpoenas include expenditures of governmental resources and involvement in controversial matters unrelated to official business).

*Fourth*, the need to avoid involving the Department in controversial issues not related to its mission (*see id.*) and the adverse effects compliance may have on the Department's mission (the seventh and eighth *Touhy* factors) further compound the Department's burden in responding

---

[11]    Importantly, these *Touhy* factors are expressly mentioned as proper governmental concerns by the D.C. Circuit in *Watts*.  *See, supra*, at 11.

to the requests. Quite simply, whether or not a private production company defamed Plaintiffs is simply not related to the Department's mission.

*Fifth, and lastly*, given the Department's production of email communications with Father Hartley, the depositions of the subpoenaed individuals constitute unnecessary, duplicative discovery. Indeed, Plaintiffs have not articulated a single reason why the Department should be forced to produce witnesses for deposition, when Plaintiffs already have a wealth of written communications on the same topic.

*   *   *

Therefore, because the requested depositions are irrelevant to the underlying action and the burden on the Agency in producing the subpoenaed individuals for deposition is substantial, the Court should quash the Subpoenas.

## IV.  IN THE ALTERNATIVE, THE COURT SHOULD ENTER A PROTECTIVE ORDER.

Although, as described above, the Subpoenas should be quashed, if the Court declines to quash the Subpoenas, the Court should nonetheless enter a protective order limiting the number, duration, and topics for any depositions. That is, in order to minimize the undue burden on the Department (which as noted above should suffiice to quash all the Subpoenas), the Court should limit Plaintiffs to (a) one deposition (b) of one subpoenaed official who resides within 100 miles of this District (c) for a duration of only two hours and (d) solely on the topic of: communications between, on the one hand, Father Hartley and Noemi Mendez, and on the other, the deponent concerning Plaintiffs or *The Price of Sugar* (which is the limitation Plaintiffs themselves claim to impose). *See* Motion at 3. This would exclude, among other topics: (i) any internal communications regarding Plaintiffs; (ii) any internal communications or opinions regarding Plaintiffs' inclusion on the Department's Human Rights Report; (iii) any opinions

regarding the veracity or reasonableness of alleged defamatory statements; (iv) the deponent's observations of *bateyes*, including those owned by Plaintiffs; and (v) external communications with individuals other than Father Hartley or Ms. Mendez regarding Plaintiffs or *The Price of Sugar*.

## <u>CONCLUSION</u>

Based upon the foregoing the Court should deny Plaintiffs' Motion, and quash the Subpoenas. In the alternative, the Court should enter a protective order limiting the depositions in this matter as described above. A proposed order is attached.

Dated: July 9, 2008
        Washington, DC

                                Respectfully submitted,


                                _____
                                JEFFREY A. TAYLOR, D.C. BAR #498610
                                United States Attorney


                                        /s/
                                _____
                                RUDOLPH CONTRERAS, D.C. BAR #434122
                                Assistant United States Attorney


                                        /s/
                                _____
                                BRIAN P. HUDAK
                                Assistant United States Attorney
                                555 4th Street, NW
                                Washington, DC 20530
                                (202) 514-7143

                                *Attorneys for Respondent*

# EXHIBIT
# 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

Felipe Vicini Lluberes, et al.,

V.

Uncommon Productions, LLC, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-11623 (DPW) D. Mass.

TO:  Alexander T. Bryan, c/o Office of the Legal Advisor, Room 5519, United States Department of State, 2201 C Street, N.W., Washington, DC  20520-6310

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Patton Boggs, LLP, 2550 M Street, N.W., Washington, DC  20037 | DATE AND TIME<br>5/28/2008 9:00 am |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment A

| PLACE        Patton Boggs, LLP, 2550 M Street, N.W., Washington, DC  20037 | DATE AND TIME<br>5/23/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE      5/9/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Benjamin G. Chew, Esq., Patton Boggs, LLP, 2550 M Street, N.W., Washington, DC 20037, (202) 457-6000
Attorneys for Plaintiffs

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                    SIGNATURE OF SERVER

                                                              _____
                                                              ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

ATTACHMENT A

## INSTRUCTIONS AND DEFINITIONS

1.    This subpoena seeking documents is directed to the Executive Office of the Office of the Legal Advisor ("L/EX") of the Department of State ("Department") with regards to its current or former employee Alexander T. Bryan ("Bryan"), acting in his personal or professional capacity as a United States Government employee.

2.    In producing documents, the Department shall furnish all documents in its possession, custody, or control. A document is deemed to be in the Department's control if it has the right to secure the documents or a copy thereof from another person or public or private entity having actual possession thereof. If any document requested herein is not in the Department's possession, custody or control, then the Department is required to state, to the best of its knowledge, the name and address of the person in possession and/or control of the original thereof. The fact that a document is in possession of another person does not relieve the Department of the obligation to produce its copy of the document, even if the two documents are identical.

3.    If any document within the scope of this request is not produced either because it has been destroyed or because it is no longer in the Department's possession, custody or control, identify (a) the number of the request for production to which it would have been responsive, (b) its author, (c) its date, (d) its subject matter, (e) its current location, (f) the person or entity that has possession, custody, or control, (g) the reason that it was not produced, (h) the date and circumstances of its loss, destruction, or release from custody, and (i) the person authorizing the loss, destruction, or release from custody.

4.    If the Department claims that any responsive electronically stored information (such as, any e-mail, electronic document (such as a Word or WordPerfect document, or electronic spreadsheet) or digital or analog video) "is not reasonably accessible" to the Department because of

"undue burden or cost" within the meaning of the Federal Rules of Civil Procedure, describe with specificity that undue burden or cost and the current location and custodian of such electronically stored information.

5.      Unless a different time period is set forth in a specific document request, the time period covered by these document requests is from September 1, 2006, to the earlier of (1) the present day or (2) the day upon which Bryan left the Department's employ.

6.      Unless context clearly indicates otherwise, the following words shall be deemed to have the following meanings:

A.   "Document" is intended to have the broadest possible meaning within the scope of the Federal Rules of Civil Procedure, and includes, without limitation, all originals, non-identical copies, and copies with marginal notations or interlineations, of any writings (including e-mails), drawings, graphs, charts, photographs, sound recordings, video recordings, images and other data or data compilations— stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably useable form.

B.   "Pertaining to," "relating to," "related to," "reflecting," "with respect to," "regarding," "referring to," "in reference to," and "concerning" shall be interpreted broadly, including both explicit and implicit references, and shall mean, without limitation, relating to, regarding, constituting, defining, discussing, containing, embodying, reflecting, stating, dealing with, prepared in contemplation of, prepared in connection with, prepared as a result of, or in any way pertaining to.

C.   "Hartley" means Father Christopher Hartley, who appears in the movie entitled "The Price of Sugar."

D.  "Haney" means the Defendant William M. Haney, III.

E.  "Uncommon Productions" means the Defendant Uncommon Productions, LLC and

4957189

its predecessors, successors, subsidiaries, partners, agents, officers, directors, employees, consultants, attorneys and representatives.

F. "Plaintiffs" means the Plaintiffs in this case, Felipe Vicini Lluberes and Juan Vicini Lluberes and their partners, agents, officers, directors, employees, consultants, attorneys and representatives.

Please Produce:

1. All documents related to communications between Bryan and Hartley concerning the working and living conditions on the bateyes in the Dominican Republic.

2. All documents related to communications between Bryan and Hartley concerning the film *The Price of Sugar*, written and produced by defendants Haney and Uncommon Productions.

3. All documents related to communications between Bryan and Haney.

4. All documents related to communications between Bryan and Uncommon Productions.

5. All documents Bryan received from Hartley related to the working and living conditions on the bateyes in the Dominican Republic.

6. All documents Bryan provided to Hartley related to the working and living conditions on the bateyes in the Dominican Republic.

7. All documents Bryan received from Hartley related to the working and living conditions on the bateyes in the Dominican Republic.

8. All documents related to communications regarding the Plaintiffs.

4957189

# EXHIBIT
# 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELIPE VICINI LLUBERES, *et ano.*,     ) | |
|     ) | |
| Plaintiffs,     ) | |
|     ) | |
| v.     ) | Misc. Case No. 08-0384 (RMC) |
|     ) | |
| UNITED STATES DEPARTMENT OF STATE,     ) | |
|     ) | |
| Respondent.     ) | |
|     ) | |

## DECLARATION OF MICHAEL GARUCKIS

I, Michael Garuckis, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the following are true and based on my personal knowledge:

1.    I am over the age of 18 and am fully competent to make this declaration.

2.    I am currently employed in the Foreign Service by the United States Department of State.

3.    From August 25, 2005, to June 28, 2008, I was the Judicial/Legal Affairs Officer in the Economic & Political Section of the Embassy of the United States of America in Santo Domingo, Dominican Republic ("Embassy"). During that time period, I worked and resided in the Dominican Republic as part of my official duties.

4.    While assigned in the Dominican Republic, I often communicated with other State Department officials in Washington, D.C. and the surrounding 100-mile area. However, in that time, I did not regularly transact business in person within the District of Columbia or the surrounding 100-mile area. In fact, during my assignment in the Dominican Republic, I travelled to the District of Columbia for official State Department purposes only on two (2) occasions.

5.    Beginning on August 7, 2008, I will be an International Relations Officer

(General) serving in the Office of United Nations Affairs in the Bureau of International Organizations in Washington, D.C.

6.      During this period of time between posts, I have resided in Tampa, Florida, and do not plan on residing in the District of Columbia or 100 miles thereof until August 6, 2008.

7.      I understand that Plaintiffs Felipe Vicini Lluberes and Juan Vicini Lluberes have served a subpoena on the Department of State seeking certain information from me.

8.      Any information or knowledge of the type sought by the subpoena that I currently possess, I learned in my official capacity as a Foreign Service Officer with the Department of State.

9.      Further, aside from the subpoena served on the State Department and correspondence related thereto, I am aware of no other process or paper from Plaintiffs directed to me that seeks me to disclose information of the type sought by the subpoenas.

10.      To my knowledge, Plaintiffs did not tender with the subpoena served on the State Department and addressed to me sufficient sums to cover travel and other related expenses that I would incur by traveling to Washington, D.C.


Further declarant sayeth not.


Michael Garuckis
First Secretary
United States Department of State

July 9, 2008
Date

- 2 -

# EXHIBIT
# 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FELIPE VICINI LLUBERES, *et ano.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Misc. Case No. 08-0384 (RMC) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## DECLARATION OF DAVID SEARBY

I, David Searby, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the following are true and based on my personal knowledge:

1.    I am over the age of 18 and am fully competent to make this declaration.

2.    I am currently the Press Officer for the Embassy of the United States of America in Santo Domingo, Dominican Republic ("Embassy"), and am employed in the Foreign Service by the United States Department of State.

3.    I currently work and reside in the Dominican Republic as part of my official duties.

4.    Although I often communicate with other State Department officials in Washington, D.C. and the surrounding 100 mile area, since being assigned my current post in the Dominican Republic, I do not regularly transact business in person within the District of Columbia or the surrounding 100 mile area. In fact, since August 26, 2007, I have travelled to the District of Columbia for official State Department purposes only on one occasion.

5.    I understand that Plaintiffs Felipe Vicini Lluberes and Juan Vicini Lluberes have served a subpoena on the Department of State seeking certain information from me.

6.     Any information or knowledge of the type sought by the subpoena that I currently possess, I learned in my official capacity as a Foreign Service Officer with the Department of State.

7.     Further, aside from the subpoena served on the State Department and correspondence related thereto, I am aware of no other process or paper from Plaintiffs directed to me that seeks me to disclose information of the type sought by the subpoenas.

8.     To my knowledge, Plaintiffs did not tender with the subpoena served on the State Department and addressed to me sums sufficient to cover travel and other related expenses that I would incur by traveling to Washington, D.C.


Further declarant sayeth not.


DAVID SEARBY
Press Officer
Embassy of the United States
Santo Domingo, Dominican Republic
United States Department of State

7-9-2008
Date

- 2 -

# EXHIBIT
# 4



U. S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

July 3, 2008

**BY FEDERAL EXPRESS**
Benjamin G. Chew
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
bchew@pattonboggs.com

**RE:**   *Lluberes, et al. v. Uncommon Productions, Inc. et al.,*
         Civil Action No. 07-11632 (DPW) (D. Mass)

         Third and Final Production of Documents

Dear Benjamin,

    I hope this day finds you well.  Please find enclosed the Department of State's (the "Department's") third and final rolling production of documents relating to the above captioned action, Bates stamped STATE000686 to STATE000790.  These documents are from the email files of Alexander T. Bryan.  At this time, the Department is unaware of any responsive documents in the possession or custody of Ambassador Hans H. Hertell.

    Although the Department reserves its right to supplement its document production, the Department believes that the enclosed production comprises the remaining documents responsive to your requests (as limited by our prior communications) that are in the possession or custody of the subpoenaed individuals.

    Further, as to the Department's email disaster recovery systems, the relevant systems used in the Dominican Republic for the subpoenaed individuals only have the ability to restore email for the preceding 90 days.  Accordingly, and as I noted in our prior communications, the Department has no reasonable reason to believe that such systems contain non-duplicative documents responsive to your requests (as limited by our prior communications).  Therefore, the Department has not endeavored to halt the routine, good-faith, normal operation of such systems, or search such systems for responsive information.

    As always, if you have any questions or concerns concerning the Department's production in this matter, please feel free to let me know.

Sincerely,

BRIAN P. HUDAK
Assistant United States Attorney

Phone:  (202) 514-7143
Email:  brian.hudak@usdoj.gov

Enclosures

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELIPE VICINI LLUBERES, *et ano.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )          Misc. Case No. 08-0384 (RMC) |
| | ) |
| UNITED STATES DEPARTMENT OF STATE, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiffs' Motion to Compel and Respondent's Cross-Motion to Quash, and all the papers thereto, and for good cause shown, it is hereby:

ORDERED that the Plaintiffs' Motion to Compel is DENIED;

ORDERED that the Respondent's Motion to Quash is GRANTED;

ORDERED that the deposition subpoenas of Messrs. Michael J. Garuckis, David Searby, Alexander T. Bryan and Ambassador Hans H. Hertell issued by this Court for the action captioned *Lluberes, et ano. v. Uncommon Productions, LLC, et ano.*, Civ. A. No. 07-11623 (DPW) (D. Mass.), are hereby QUASHED; and it is further

ORDERED that this miscellaneous matter is hereby CLOSED.


SIGNED:


_____                          _____
Date                                      ROSEMARY M. COLLYER
                                          United States District Judge

Copies to Counsel of Record by CM/ECF