UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELIPE VICINI LLUBERES, *et ano.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Misc. Case No. 08-0384 (RJL) |
| ) | |
| UNITED STATES DEPARTMENT OF STATE, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**REPLY IN FURTHER SUPPORT OF RESPONDENT'S CROSS-MOTION
TO QUASH, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

By and through its undersigned counsel, Respondent United States Department of State

("Department," "State," or "Respondent"), respectfully submits this reply ("Cross-Motion

Reply") to Plaintiffs' Opposition to State Department's Cross-Motion to Quash / Plaintiffs'

Reply in Further Support of Motion to Compel (Plaintiffs' "Reply") and in further support of its

Cross-Motion[1] to quash the Subpoenas, or in the alternative for a protective order.  For the

reasons stated herein, and those set forth in the Department's Opposition, the Court should quash

the Subpoenas.

**PRELIMINARY STATEMENT**

Through its Cross-Motion, State seeks the same result that the Court reached in *Hartley v.

Lluberes, et ano.*, Misc. No. 08-0010 (RJL) (D.D.C. May 2, 2008), which concerned Plaintiffs'

subpoena of a third-party, Father Hartley, seeking documents and testimony.  The Court in that

case ordered Father Hartley to produce responsive documents, but quashed the subpoena to the

---

[1]     Unless otherwise noted, terms used herein are intended to have the same meaning as terms defined in
Respondent's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Compel and in Support
of Respondent's Cross-Motion to Quash, or in the Alternative, for a Protective Order (Respondent's "Opposition").

extent it sought deposition testimony. Here, State has already voluntarily produced all responsive documents currently known to exist, subject to stated limitations and without conceding such documents' relevance. Nonetheless, Plaintiffs continue to seek burdensome, irrelevant discovery from Department officials that is clearly outside that permitted under the Federal Rules of Civil Procedure ("Rules"). The Department respectfully suggests that if the Court found it prudent to quash the deposition subpoena issued to Father Hartley (an individual with some direct connection to the underlying action), surely the deposition Subpoenas addressed to State officials with no connection to the underlying action should similarly be quashed. Nothing in Plaintiffs' Reply dictates a different result.

*First*, Plaintiffs essentially argue that because the Department's *Touhy* regulations require that subpoenas seeking information obtained by State employees in their official capacities be sent through the Department's Office of Legal Adviser, all other statutes, Rules and other authority concerning issuance, service, and quashing of subpoenas are irrelevant to this dispute. *See* Reply at 19-22. Plaintiffs, however, fail to cite any authority in support of this illogical argument. Indeed, such an argument is quite ironic given that Plaintiffs repeatedly assert that the Federal Rules of Civil Procedure, not the Department's *Touhy* regulations, govern the Subpoenas. As the Department clearly established in its Opposition, the Rules (specifically, Rules 45(c)(3)(A)(ii), (b)(3), which by reference incorporates the provision of 28 U.S.C. § 1783) mandate that the Subpoenas of Messrs. Garuckis and Searby be quashed.

*Second*, Plaintiffs still have not articulated any legitimate relevance to the underlying action of the information they seek through the Subpoenas. The arguments Plaintiffs present in their Reply appear to be constructed upon a fundamental misunderstanding of civil discovery -- namely, Plaintiffs' arguments fail to acknowledge that while civil discovery is liberal, it is not

limitless. Indeed, the information sought must be relevant to a claim or defense or reasonably calculated to lead to the discovery of relevant, admissible evidence. Conversations between Father Hartley -- a third-party -- and the subpoenaed individuals -- also third-parties -- are simply irrelevant to a claim or defense in the underlying action (nor are they likely to lead to additional admissible information). As the Department noted in its Opposition, Plaintiffs' two rationales for the relevance of such conversations -- credibility and the basis for the Department's human rights report -- are untenable. Apparently realizing the weaknesses of these rationales, Plaintiffs attempt to buttress the relevance of such conversations by expanding, at this late hour, the scope of testimony that they seek. That is, Plaintiffs now want to obtain testimony concerning not only conversations with Father Hartley, but also conversations with other third-parties. *See* Reply at 12. The Court should recognize this tactic for what it is (*i.e.*, a desperate last-minute attempt to justify the pernicious deposition Subpoenas), reject this untimely expansion of the scope of testimony sought by Plaintiffs, and quash the Subpoenas.

*Third,* Plaintiffs grossly and improperly extend dicta[2] of the D.C. Circuit set forth in *Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007), in an equally desperate attempt to avoid Respondent's compelling argument that it, as a Federal agency, has unique considerations in responding to non-party information requests, which support quashing the Subpoenas. Far from arguing that the *Touhy* regulations "control" discovery (*see* Reply at 5), the Department merely asserts that the factors outlined in its *Touhy* regulations are relevant in the mix of considerations under Rule 45 when assessing the burden to the Department in responding to the Subpoenas. *See* Opp. at 10. Plaintiffs, however, ignore this distinction, and in essence urge this Court to hold

---

[2]     Contrary to Plaintiffs' argument (*see* Reply at 7), undoubtedly the discussion of *Touhy* regulations in *Watts* was dicta, as it was not essential to the holding of the case. The holding in that case was that the D.C. Circuit did not have subject matter jurisdiction over the SEC's decision regarding the release of certain information as such a decision was not a "final disposition" of the kind referenced in the APA. *See Watts*, 482 F.3d at 506.

that if a consideration is listed in the Department's *Touhy* regulations (no matter how valid or obvious), it cannot be considered in assessing the Department's burden.  The flaws in this conclusion are so obvious they barely require discussion.  Aside from this nonsensical argument and conclusory and unsupported denials, Plaintiffs fail to substantively address Respondent's arguments that the considerations in its *Touhy* factors reveal a significant undue burden, and thus, concede the point.[3]  Accordingly, even if the information sought by the Subpoenas has some miniscule relevance, given the significant burdens on the Department, the Subpoenas are ripe to be quashed.

*Lastly*, Plaintiffs wholly fail to address the alternate remedy State seeks through its Cross-Motion -- *i.e.*, a protective order limiting Plaintiffs to (a) one deposition (b) of one subpoenaed official who resides within 100 miles of this District (c) for a duration of only two hours and (d) solely on the topic of communications between the deponent and Father Hartley or Noemi Mendez concerning Plaintiffs or *The Price of Sugar* (which is the limitation Plaintiffs themselves originally claimed to impose).  Accordingly, even if the Court denies State's motion to quash, the Court should enter such a protective order, as this alternate request for relief is unopposed.

---

[3]    Moreover, as noted in its Opposition, non-Federal agency specific factors also reveal substantial burdens that the Department would incur in providing the subpoenaed deposition testimony.  *See* Opp. at 13 (available from more convenient, relevant source), and 17 (unnecessarily cumulative and duplicative).

## ARGUMENT

**I.    THE SUBPOENAS OF MESSRS. GARUCKIS AND SEARBY SHOULD BE QUASHED PURSUANT TO THE RULES AND OTHER APPLICABLE LAW.**

Plaintiffs' arguments that issuance and service of the Subpoenas on Messrs. Garuckis and Searby (who resided in the Dominican Republic when Plaintiffs issued the Subpoenas to them and who continue to reside more than 100 miles outside this district) was proper and that such Subpoenas should not be quashed simply miss the point.  Contrary to Plaintiffs' assertions, State is not playing "games" with service.  Rather, State is protecting its bona fide interest in preserving it resources and protecting its employees from having to travel thousands of miles from their duty stations to the District of Columbia for deposition testimony in a private dispute.[4] For the reasons stated in the Department's Opposition, the Subpoenas issued to these two individuals should be quashed.

**A.    Issuance and Service of the Subpoenas Failed to Comply With Statute.**

Plaintiffs begin by arguing that the Office of the Legal Adviser was a proper agent for service of process of the Subpoenas on Messrs. Garuckis and Searby.  This argument, however, misses the point.  The Department does not argue that the Office of Legal Adviser was not an appropriate entity to serve with the official capacity Subpoenas, rather, the Department asserts that the process by which Plaintiffs issued and served the Subpoenas of Messrs. Garuckis and Searby was deficient.

---

[4]    As noted in the Department's Opposition, Plaintiffs' self-serving offer to take the depositions in the Dominican Republic is irrelevant to this dispute, as it is outside the jurisdiction of this Court to compel judicial proceedings in a foreign country.  *See* Opp. at 8, n.5.  Moreover, Plaintiffs have not offered any analysis on whether pre-trial, civil depositions are even permitted under the law of the Dominican Republic.  *See id.*  Further, the Subpoenas themselves seek to compel testimony in the District of Columbia, not in the Dominican Republic.  Indeed, pursuant to Rule 45(a)(2), subpoenas may only be issued from the Court for the district where the deposition will take place.  Accordingly, if Plaintiffs wish to compel testimony in the Dominican Republic, they must do so through some device other than a simple Rule 45 subpoena.

As the Department explained in this Opposition, it is beyond dispute that Messrs. Garuckis and Searby physically resided in the Dominican Republic at the time the Subpoenas to them were issued. *See* Opp. at 4; Garuckis Decl. at ¶ 3, Opp. Ex. 2;[5] Searby Decl. at ¶ 3, Opp. Ex. 3. Accordingly, by the express and unambiguous terms of 28 U.S.C. § 1783, subpoenas of such individuals may only be issued by order of the Court upon a showing that (i) the subpoenas are necessary in the interests of justice; and (ii) it is not possible to obtain the requested testimony in another admissible form. *See* Opp. at 6-7. That is, irrespective of whether a subpoena is ultimately served on an agent for service of process, the procedure called for by 28 U.S.C. § 1783 applies because the Subpoenas seek the testimony of citizens of the United States residing abroad.

Plaintiffs attempt to avoid this straightforward application of the unambiguous statute by interposing a number of unpersuasive and unsupported arguments. *First*, Plaintiffs argue that because the Subpoenas seek deposition testimony of Messrs. Garuckis and Searby in their official capacity, their physical residence is irrelevant. Even if one were to follow Plaintiffs' logic, Plaintiffs' argument is untenable. That is, it is well established that "[w]here a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties." *Nestor v. Hershey*, 425 F.2d 504, 521, n.22 (D.C. Cir. 1969); *see also Al-Ahmed v. Chertoff*, --- F. Supp. 2d ---, 2008 WL 2718887, at *1 (D.D.C. Jul. 14, 2008) (Huvelle, J.) (same, *quoting Nestor*). Accordingly, it is beyond dispute that Messrs. Garuckis and Searby resided in the Dominican Republic when the

---

[5]    For the avoidance of confusion, exhibit references herein conform to the following labeling convention: (a) exhibits to Plaintiff's Motion to Compel, "Motion Ex."; (b) exhibits to State's Opposition, "Opp. Ex."; (c) exhibits to Plaintiffs' Reply, "Reply Ex."; and (d) exhibits to this Cross-Motion Reply, "X-Mot. Reply Ex."

Subpoenas were issued to them. *See* Garuckis Decl. at ¶ 3, Opp. Ex. 2; Searby Decl. at ¶¶ 2-3, Opp. Ex. 3.[6]

*Second*, Plaintiffs argue that the Department is advocating a "catch-22" -- that is, that the Department's *Touhy* regulations require service on the Office of Legal Adviser, but the Department argues that Plaintiffs need to fulfill the requirements of 28 U.S.C. § 1783. *See* Reply at 18-21. Contrary to Plaintiffs' assertions that the Department is "playing 'gotcha' with private litigants facing tight discovery deadlines," the Department's regulations and its reliance on 28 U.S.C. § 1783 is entirely consistent. Indeed, if Plaintiffs followed the procedures outlined in 28 U.S.C. § 1783 (*i.e.*, having a Court issue the subpoenas upon a showing that, among other things, they are necessary in the interests of justice), and then served the Court-issued subpoenas on the Office of Legal Adviser, issuance and service of the subpoenas may have been proper. However, instead of following the statute's unambiguous procedures for subpoenaing U.S. citizens residing abroad, Plaintiffs simply issued the Subpoenas under Plaintiffs' counsel's authority. *See, e.g.*, Searby Subpoena, Motion Ex. N.

*Third*, Plaintiffs argue that forcing them to comply with the congressionally enacted statute governing subpoenas of U.S. citizens residing in foreign countries, runs afoul of Rule 1 in that it does not promote the "just, speedy, and inexpensive determination" of the action. *See* Reply at 20. This argument is illogical on its face. Nothing in Rule 1 allows a plaintiff to disregard Federal statutes to more easily obtain irrelevant and burdensome discovery from a third-party. Indeed, it is worth noting that any "tight[ness]" in Plaintiffs' discovery deadline is a result of their own inactions. That is, although discovery in the underlying action began in

---

[6]    Mr. Garuckis' intent to move to the District of Columbia at some future date has no bearing on this matter. That is, Plaintiffs have cited no authority to contradict the logical axiomatic notion that defects in the issuance and service of a subpoena are analyzed at the time the subpoena was issued and served, respectively. Furthermore, at all

October 2007, Plaintiffs waited until May 2008, one-month before the initial discovery deadline, to serve the majority of the Subpoenas on the Department.

In sum, nothing in Plaintiffs' Reply obviates their obligation to seek an order of the Court and show (i) that requested information is necessary in the interests of justice and (ii) that it is not possible to obtain the requested testimony in admissible form *before* they issued and served the Subpoenas to Messrs. Garuckis and Searby, who resided abroad when the subpoenas were issued and served.

### B.    Rule 45(c)(3)(A)(ii) Mandates that Such Subpoenas Be Quashed.

In a single paragraph at the end of their Reply and without citing any support whatsoever, Plaintiffs remarkably argue that the express language of Rule 45(c)(3)(A)(ii), which mandates that the subpoenas of Messrs. Garuckis and Searby be quashed, should not apply to this matter. In support of their argument, Plaintiffs assert that the straightforward application of the unambiguous rule "defies the purpose and logic behind the Federal Rules and . . . State's own internal *Touhy* housekeeping regulations."   Reply at 21.   Plaintiffs' argument, however, is misguided.  The purpose of Rule 45(c)(3)(A)(ii), which is distinct from the service provisions of Rule 45, is to protect third-parties from being required to comply with pernicious subpoenas issued under Rule 45 that purport to require them to travel more than 100 miles from where they reside (even if the subpoena was properly served).  *See* Opp. at 8-9.  Indeed, Plaintiffs are correct that this unambiguous rule prevents non-party State Department employees residing at duty stations abroad from being compelled to provide pre-trial deposition testimony simply through a Rule 45 subpoena.   However, contrary to Plaintiffs' unfounded assertions, there is nothing improper about this straightforward application.   Indeed, the Rule protects State officials

---

relevant times (*i.e.*, issuance, service, filing of this miscellaneous matter, and today), Mr. Garuckis has not resided or regularly transacted business within 100 miles of the District of Columbia.

stationed abroad (and other U.S. citizens residing in foreign countries) from pernicious subpoenas seeking third-party pre-trial deposition testimony. In sum, Plaintiffs' unsupported position is directly refuted by the plain text of the rule and the undistinguishable authority cited by the Department in its Opposition. *See* Opp. at 8-9.

## II.    THE SUBPOENAS SHOULD BE QUASHED AS THEY SEEK IRRELEVANT INFORMATION AND ARE UNDULY BURDENSOME.

Plaintiffs have failed to show that the relevance of the requested deposition testimony, when balanced against the burdens that would be placed upon the Department in complying with the deposition Subpoenas, is sufficient to compel the Agency to produce four witnesses for deposition. Indeed, Plaintiffs have failed to articulate how the requested deposition testimony is legitimately relevant to their claims against Defendants Uncommon Productions, LLC and its principal; and how the burdens articulated by the Department are insincere or overcome by the purported relevance of the information sought.

Contrary to Plaintiffs' implications, "discovery under Rule 26 is liberal but not limitless. Chief among any limitation is relevance." *Ray v. State Farm Mut. Auto. Ins. Co.*, Civ. A. No. 1:05-1782-DFH-TAB, 2007 WL 1597913, at *1 (S.D. Ind. June 1, 2007) (denying motion to compel discovery); *see also Alexander v. FBI*, Civ. A. No. 96-2123, 1998 WL 1049005, at *2 (D.D.C. May 28, 1998) (Lamberth, J.) (granting motion to quash non-party subpoena, noting "The power to subpoena a non-party is not without limit."). That is, it is axiomatic that "[c]ourts can limit discovery to that which is proper and warranted in the circumstances of the case." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452-54 (D.D.C. 2002) (Urbina, J.) (denying motion to compel and granting motion to quash non-party subpoenas where the requested information fell "outside the scope of discovery needed for [plaintiff] to prove its claim"). Consequently, courts will quash non-party subpoenas when, among other things, the discovery

sought is (a) irrelevant; (b) obtainable from another source that is more convenient;[7] or (c) unduly burdensome -- *i.e.*, the proposed discovery seeks to impose burdens upon the non-party that outweigh its likely benefit to the underlying action.  *See, e.g., id.* at 452-54 ("In short, the documents are irrelevant to the plaintiff's claim."); *United States v. Masat*, 948 F.2d 923, 933 (5th Cir. 1991) (affirming district court's quashing of subpoenas to government witnesses, noting "The decision whether to grant a request for a subpoena rests within the district court's discretion.  A district court does not abuse this discretion when it quashes a subpoena seeking irrelevant or immaterial information.") (citations omitted).  Because the information sought is irrelevant, or at the very least the relevance of the information sought is miniscule compared with the burdens it would impose on the Department, the Subpoenas should be quashed.

**A.       The Information Sought by Subpoenas Is Irrelevant.**

Plaintiffs have failed to establish that the deposition testimony sought by the Subpoenas is relevant to the claims or defenses in the underlying action or is reasonably calculated to lead to the discovery of relevant, admissible evidence in that action.  In their Reply, Plaintiffs unsuccessfully argue that the requested information is relevant to: (a) Father Hartley's credibility; and (b) whether the Defendants were reasonable in relying upon the Department's human rights report.  In light of the circumstances of the underlying action, however, these purposes are irrelevant to that action and Plaintiffs have failed to show that the requested

---

[7]       As the Department noted in its Opposition, aside from their attempt to serve Father Hartley with an insufficient Rule 45 subpoena at his feet while he was visiting this District, Plaintiffs took no additional efforts to secure Father Hartley's deposition testimony.  *See* Opp. at 13.  Although Plaintiffs in their Reply argue that any additional efforts would not be expeditious, in other filings in the underlying action they seem to have taken a different position.  Indeed, Plaintiffs themselves recently argued in opposition to a motion in the underlying action that Defendants' "gamble in deciding to forgo international service of process to obtain [ ] non-party depositions" should not affect Plaintiffs' position.  *See* Pls' Resp. to Defs' Mot. for Leave to Take Limited Disc. Out of Time at 5-6, *Lluberes, et ano. v. Uncommon Prods., LLC, et ano.* Civ. A. No. 07-11623 (DPW) (D. Mass.), Docket Entry No. 83, X-Mot. Reply Ex. 1.  Similarly, Plaintiffs themselves should not obtain a better position in this dispute because they gambled in not pursuing Father Hartley's testimony through other means.

information at the very least is calculated to lead to the discovery of information that has "any tendency to make the existence of any fact that is of consequence to determination of the [parties' claims or defenses] more probable or less probable."  Fed. R. Evid. 401.

*First*, as noted in the Department's Opposition, the only issue in the underlying action that even remotely concerns Father Hartley is whether Uncommon Productions, LLC and its principal appropriately republished and relied upon Father Hartley's statements in light of the information known to them at the time.  Accordingly, because the Defendants were not aware of the substance of the third-party conversations between Father Hartley and Department officials, such information has no bearing on whether Defendants reasonably believed the statements of Father Hartley that they republished were true.  *See* Opp. at 12-15.  That is, even if Father Hartley's statements to the Department contained some untruths, that fact does not make it any more or less likely that Father Hartley's statements to Defendants were truthful[8] or reliable as known by Defendants.  Indeed, Plaintiffs have failed to answer the central question: how can statements between two third-parties, of which Defendants had no knowledge, have any bearing on whether or not Defendants reasonably relied upon and/or maliciously republished statements that Father Hartley made to Defendants?  Nothing in Plaintiffs' Reply answers this question or refutes the above analysis.

*Second*, as the Department noted in its Opposition, the requested testimony is irrelevant to whether the State Department solely or principally relied upon Father Hartley's statements when mentioning Plaintiffs in a Department human rights report.  What information the Department relied upon and how much weight it gave to that information is indisputably

---

[8]    Indeed, Plaintiffs have wholly failed to articulate how statements made by Father Hartley to the Subpoenaed individuals have any bearing on the objective truthfulness of statements Father Hartley made to the Defendants.  That is, statements made by Father Hartley to the Department are not reasonably calculated to produce relevant, admissible evidence that statements in *The Price of Sugar* were, as a matter of fact, false.

protected by the deliberative process privilege.[9]  *See* Opp. at 14-15.  Consequently, testimony of

conversations between the four Subpoenaed officials and Father Hartley is simply insufficient, in

and of itself, to support any contention that the Department relied solely or principally upon

Father Hartley.[10]

    Apparently realizing this truism, Plaintiffs, through their Reply, belatedly attempt to

reverse their course and expand the testimony they seek through their Motion.  That is, despite

Plaintiffs' prior assertions in their Motion that they only seek discovery on "Fr. Hartley's (and

Ms. Mendez's) communications and exchanges with the five subpoenaed State employees

concerning the Vicinis and POS" (Motion at 3; Reply at 3), Plaintiffs covertly attempt to expand

that limitation in their Reply to include "whether they talked to anyone else about the same

issues."  Reply at 12.  This improper, 11th hour attempt to expand the scope of the requested

testimony, should be rejected by the Court.[11]

    *Lastly*, as articulated in Defendants' Opposition, because Father Hartley will not be

testifying at trial in the underlying action -- a fact which Plaintiffs concede (*see* Reply at 10) --

---

[9]     Contrary to Plaintiffs' contentions, the Department does not argue that the deposition Subpoenas should be quashed solely because of the deliberative process privilege.  Rather, the Department merely advocates that the application of the privilege is a proper consideration in determining whether Plaintiffs can achieve their stated purposes in seeking disclosure.  *Cf. Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 697 (D.D.C. 1996) (quashing subpoena where 95% of information sought was privileged or classified).

[10]    Furthermore, contrary to Plaintiffs' unfounded assertions, even if Father Hartley's statements to the Department contained some untruths, that fact has no bearing on whether Defendants (who had no knowledge of such statements) properly relied upon State's human rights report in publishing the statements contained in *The Price of Sugar*.  Notably, nowhere in Plaintiffs' two briefs, which collectively span 44 pages, do Plaintiffs even summarily allege that Defendants had knowledge of the substance of the communications Father Hartley made to the Subpoenaed individuals.

[11]    Moreover, even if discovery of other third-party conversations were properly requested by Plaintiffs, Plaintiffs have failed to articulate how that testimony makes it any more or less likely that Defendants (which do not include the Department or Father Hartley) defamed Plaintiffs.  Indeed, conversations that four Department employees had with other third-parties do not tend to prove that the Department relied solely or principally upon Father Hartley in concluding that Plaintiffs should be listed on the Department's human rights report.  For example, the Department could have relied upon analysis generated by retained experts (which would be protected by the deliberative process privilege) or third-party statements made to officials other than the four subpoenaed individuals.  In short, Plaintiffs should not be allowed to pursue a fishing expedition that will undoubtedly net no fish.

his general credibility in light of statements not known to Defendants has no bearing on any material fact in the underlying action. That is, because Father Hartley will not testify at trial in the underlying action, the information requested through the Subpoenas cannot be used as impeachment evidence in that action.

Accordingly, the information requested is neither relevant to the claims or defenses in the underlying action nor reasonably calculated to lead to the discovery of relevant, admissible evidence in that action; and thus, the deposition Subpoenas should be quashed.

### B. Considerations Identified in the Department's *Touhy* Regulations Are Relevant In Assessing the Burdens on the Department.

The Department does not argue that this matter is governed by the APA or that the Department's *Touhy* regulations set the standard by which the Court should evaluate the Motion and Cross-Motion. Rather, the Department merely argues (consistent with the D.C. Circuit's reasoning in *Watts*) that it, as a Federal agency, has unique considerations in responding to third-party subpoenas -- a large portion of which are conveniently codified within its *Touhy* factors. Thus, the Department correctly asserts that considering such factors in assessing the burden to the Department is proper.

Plaintiffs ignore this distinction and continue to argue against the straw-man that the Rules, not the Department's *Touhy* regulations "control" this action. Indeed, Plaintiffs simply reiterate the immaterial arguments presented in their Motion and Opening Brief. In practical effect, Plaintiffs would have this Court conclude that simply because a factor is identified in the Department's *Touhy* regulations, such a factor (no matter how obvious or relevant) cannot be used in the mix of considerations when assessing the burden on the Agency in responding to the Subpoenas. This conclusion is meritless on its face; and notably, Plaintiffs cite no authority that supports their position.

Moreover, Plaintiffs' ludicrous position appears to be based upon a central, flawed premise.  Apparent from their Reply, central to Plaintiffs' argument is their unfounded, unsupported and untenable assertion that State, a Federal agency operating on tax-payer dollars, has the same considerations in responding to a third-party Subpoena as any ordinary, private third-party.  *See* Reply at 8.  As noted in the Department's Opposition, this assertion was plainly refuted by the D.C. Circuit in *Watts*.  *See* Opp. at 11-12.  Indeed, after noting that courts in this Circuit give "special weight" to non-party status in evaluating burdens imposed by discovery requests,[12] the D.C. Circuit in *Watts* specifically noted that in responding to third-party subpoenas Federal agencies have a "serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations."  *Watts*, 482 F.3d at 508.

Accordingly, because the Department's *Touhy* factors are proper considerations for the Court and reveal a substantial burden on the government (*see* Opp. at 15-17) -- a point that Plaintiffs do not substantively oppose in their Reply;[13] and the requested information has miniscule, if any, relevance, the deposition Subpoenas should be quashed based upon a balancing of competing interests.  *See* Opp. at 9-17.

---

[12]     In their Reply, Plaintiffs attempt to avoid this direct quotation from *Watts* by improperly characterizing the *Watts* opinion as "requiring courts *only* to be 'generally sensitive to the costs imposed on third parties.'"  Reply at 5 (emphasis added).  Nowhere in the *Watts* decision does the D.C. Circuit make such a limited statement.  Moreover, Plaintiffs' citations to non-controlling decisions from different jurisdictions (Reply at 5, n.4) are irrelevant in light of the D.C. Circuit's clear mandate that courts in this Circuit give "special weight" to non-party status.  *Watts*, 482 F.3d at 508.

[13]     Plaintiffs summarily allege in a single footnote and without support that three of the seven factors identified by the Department "do not favor State nearly as much as it suggests."  This conclusory argument not only is insufficient to refute the persuasive well-articulated arguments in the Department's Opposition, but concedes that these three factors favor State to some degree.  Moreover, Plaintiffs' footnote fails to address State's arguments that four other *Touhy* factors reveal a substantial burden.

### III.    IN THE ALTERNATIVE, THE COURT SHOULD ENTER A PROTECTIVE ORDER.

Plaintiffs wholly fail to address the Department's request for a protective order, and thus, the Department's Cross-Motion is conceded in that regard.  "'It is well understood in this Circuit that when a plaintiff files an opposition to a motion [ ] addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" *United States v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) (Walton, J.)), *quoting Hopkins v. Women's Div., General Bd. of Global Ministries,* 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (Walton, J.) (citations omitted); *see also Day v. D.C. Dep't of Consumer &  Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) (Urbina, J.) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."); *Elliott v. U.S. Dep't of Justice*, Civ. A. No. 07-0205 (JDB), 2007 WL 3156286, at *1 (D.D.C. Oct. 30, 2007) (Bates, J.) (dismissing case where plaintiff failed to address certain dispositive arguments in his opposition).  Indeed, "[t]he court's role is not to act as an advocate for [a] plaintiff and construct legal arguments on his behalf in order to counter those in [a] motion[.]"  *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) (Urbina, J.).   Accordingly, because Plaintiffs failed to address the Department's request for a protective order, if the Court does not wholly quash the Subpoenas (which it should based upon the above), the Court should automatically enter the protective order sought by the Department -- *i.e.*, limiting Plaintiffs to (a) one deposition (b) of one subpoenaed official who resides within 100 miles of this District (c) for a duration of only two hours and (d) solely on the topic of: communications between the deponent and Father Hartley or Noemi Mendez

concerning Plaintiffs or *The Price of Sugar* (which is the limitation Plaintiffs themselves claim to impose).[14]

## CONCLUSION

Based upon the foregoing and the reasons set forth in the Department's Opposition, the Court should deny Plaintiffs' Motion, and quash the Subpoenas.  In the alternative, the Court should enter a protective order limiting the depositions in this matter as described above.

Dated: August 1, 2008
      Washington, DC

<div style="margin-left:40%">

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

    /s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

    /s/
_____
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Respondent*

</div>

---

[14]    This would exclude, among other topics: (i) any internal communications regarding Plaintiffs; (ii) any internal communications or opinions regarding Plaintiffs' inclusion on the Department's Human Rights Report; (iii) any opinions regarding the veracity or reasonableness of alleged defamatory statements; (iv) the deponent's observations of *bateyes*, including those owned by Plaintiffs; and (v) external communications with individuals other than Father Hartley or Ms. Mendez regarding Plaintiffs or *The Price of Sugar*.

# EXHIBIT
# 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **FELIPE VICINI LLUBERES,** *et al.* | |
| **Plaintiffs,** | |
| **v.** | **CASE NO. 07 CA 11623 (DPW)** |
| **UNCOMMON PRODUCTIONS, LLC,** *et al.*, | |
| **Defendants.** | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
LEAVE TO TAKE LIMITED DISCOVERY OUT OF TIME**

Plaintiffs Juan Vicini Lluberes and Felipe Vicini Lluberes ("Plaintiffs" or the "Vicinis"), by and through their undersigned counsel, pursuant to the Court's Order of July 25, 2008, hereby respond to the Motion for Leave to Take Limited Discovery Out of Time of Defendants Uncommon Productions, LLC ("UP") and William M. Haney, III ("Haney") (together, "Defendants"), stating as follows:

Defendants' assertion of a discovery emergency requiring the Court's immediate attention is entirely contrived as most of the "limited" discovery Defendants now seek so urgently either was stipulated to by Plaintiffs prior to the filing of Defendants' Motion for Leave, is the subject of a motion to compel already pending before the Court, or is a self-induced crisis resulting from Defendants' own dilatory tactics—specifically, waiting until the close of discovery to raise issues they have known about for months. The Court therefore should deny Defendants' Motion for Leave and award Plaintiffs their reasonable fees and costs associated with responding to this Motion.

**I.     Plaintiffs Already Agreed to the Deposition of Newlink on August 11, 2008.**

On or about November 15, 2007, Defendants subpoenaed Newlink Communications Group, a Florida-based public relations firm retained by Plaintiffs to address defamatory statements made by Defendants in *The Price of Sugar* ("*POS*") and earlier iterations. On or about January 24,

2008, Newlink (represented by its own counsel) began producing documents to Defendants in response to the subpoena. Newlink made subsequent productions on March 27, 2008, and May 9, 2008, respectively. Sometime thereafter, Defendants resolved their outstanding requests for production with Newlink agreeing to produce additional documents by August 4, 2008. Motion for Leave at 2. Defendants also caused to be issued a Rule 30(b)(6) deposition notice for Newlink on June 27, 2008.

Newlink offered to make its corporate representative, Mr. Sergio Roitberg, available for deposition on the last day of discovery, August 11, 2008, a full week after Defendants should receive Newlink's final document production (Plaintiffs' counsel, Benjamin Chew, agreed to that date as well). **Exhibit A**. On July 24, 2008, Mr. Chew tentatively agreed to extend the current discovery deadline *for the limited purpose* of Defendants deposing the two Plaintiffs on August 13 and 14, and postponing Newlink's corporate representative to August 18, 2008, provided that Defendants agree to provide mutually acceptable dates within the current discovery period (that is, on or before August 11, 2008) for (1) Plaintiffs' Rule 30(b)(6) deposition of Defendant Uncommon Productions, and (2) the completion of *POS* co-producer Eric Grunebaum's deposition (not to exceed four hours) which began the previous day, July 23, 2008. **Exhibit B**. Three hours after Mr. Chew sent Defendants' counsel, Betsy Koch, the e-mail attached at Exhibit B, Defendants filed their Motion for Leave. **Exhibit C**.

Even if Defendants were not inclined to accept Plaintiffs' offer to permit Newlink's deposition beyond the current discovery deadline, Plaintiffs already had resolved the issue of Newlink's deposition before Defendants filed their instant Motion for Leave on Thursday, July 24. It therefore is perplexing why Defendants would raise this issue with the Court, except to create the false impression that Plaintiffs somehow have stymied Defendants' discovery requests, which in any event is belied by the facts. There being no basis for Defendants to file their Motion for Leave with

respect to the Newlink deposition, Plaintiffs hereby respectfully request that the Court enter an

Order awarding them their reasonable fees and costs associated with responding to this Motion.

## II.    Plaintiffs Also Agreed to Make Themselves Available for Deposition on August 13th and 14th

Defendants also lack any basis for filing their Motion for Leave concerning the depositions

of Plaintiffs Juan and Felipe Vicini Lluberes.  By email dated July 22, 2008, two days before

Defendants filed their Motion for Leave, Plaintiffs agreed to make Mr. Juan Vicini Lluberes available

for deposition at the offices of Defendants' counsel in Washington, D.C., on August 13, 2008, with

the understanding that Plaintiffs further would consent to have that deposition taken out of time.

**Exhibit D**.  Similarly, Plaintiffs agreed to permit Defendants to take Mr. Felipe Vicini Lluberes'

deposition on August 14, 2008, at the offices of Defendants' Washington counsel.  *Id.*  Notably,

Defendants waited until July 21, 2008, (three days before filing their Motion for Leave) to serve their

notices of deposition upon Plaintiffs. **Exhibits E and F.**  Plaintiffs nonetheless accommodated

these belated notices, even willing to schedule their depositions after the August 11, 2008, discovery

cut-off in response to Defendants' requests for additional time following the final production of

documents by Newlink on August 4.

Merely because Defendants have delayed much of their discovery to the final weeks before

the once-extended discovery cut-off of August 11, 2008 (the original cut-off being June 28, 2008) is

not sufficient justification to permit Defendants more time.  Even so, the deposition of Plaintiffs is a

non-issue as they already have agreed to make themselves available for deposition (out of time, to

accommodate Defendants) on August 13 and 14, 2008, at the offices of Defendants' counsel in

Washington, D.C.  Ex. D.

## III.    Plaintiffs Will File Their Opposition to Defendants' Motion to Compel the Depositions of the Four Non-Parties Pursuant to the Local Rules on August 1, 2008.

As evidenced in their Initial Disclosures served on November 8, 2007, Defendants have long

been aware of the existence of the four witnesses identified in their Motion to Compel—none of whom are employees of the individual Plaintiffs.  **Exhibit G**.  Knowing that all four of these non-parties were foreign nationals, Defendants announced their intention during the Scheduling Conference held on October 26, 2007, to obtain these witnesses' depositions via international service of process:

> MS. KOCH:  Yes, your Honor. And I, with all due respect, do believe that this case has enough complications and enough complicating factors, that it requires that long. All of the facts in the case took place in the Dominican Republic, requiring for third-party witnesses issues relating to trying to get testimony from them. All of the filming was done –
>
> THE COURT:  What does –
>
> MS. KOCH:  -- in Spanish.
>
> THE COURT:  What does that mean?
>
> MS. KOCH:  That –
>
> THE COURT:  You're going to use the AP [Hague] convention, is that what you're saying?
>
> MS. KOCH:  Potentially, your Honor, yes….

**Exhibit H,** page 10, lines 5-18.  There is no indication, however, that Defendants ever followed through and initiated *any* international service of process upon these four individuals.  Instead, Defendants waited until July 17, 2008, to notify Plaintiffs that they wished to take the depositions of these four individuals, improperly, via Rule 30 notices.  **Exhibit I**.

As the Court is aware, pursuant to the Local Rules, Plaintiffs' response to Defendants' Motion to Compel the depositions of these four individuals is due on August 1, 2008.[1]  In their

---

[1] Defendants incorrectly state that the filing deadline for Plaintiffs' Opposition is July 31. Rather, August 1 is the correct date for Plaintiffs' Opposition. Local CM/ECF Administrative Procedure G states in full:

> "Filing documents electronically does not in any way alter any filing deadlines.  All electronic transmissions of documents must be completed **prior to 6:00 PM, Eastern Standard Time, in order to be considered timely filed that day.**  Where a specific time of day deadline is set by court order or stipulation, the electronic filing must be completed by that time."  (Emphasis in original).

anticipated Opposition, Plaintiffs will apprise the Court that two of the four individuals Defendants

seek to depose, Campos de Moya and Carmen Ogando, are not employees of Plaintiffs, but rather

are employees of corporations based in the Dominican Republic that are affiliated with Plaintiffs.

Ricardo Hernandez, the third of the four individuals Defendants seek to depose, is neither an

employee of Plaintiffs nor an employee of any company affiliated with Plaintiffs, and his

whereabouts are unknown.  Similarly, the person Defendants identify only as "Merite" is not an

employee of Plaintiffs or any company affiliated with Plaintiffs, and his whereabouts also are

unknown.  Even though Plaintiffs apprised Defendants of these essential facts via email on May 4,

2008, **Exhibit J**, Defendants nonetheless moved to compel Plaintiffs to produce these four

witnesses for deposition.

      With Plaintiffs' Opposition to Defendants' Motion to Compel due later this week on August

1, 2008 (ten days before the close of discovery on August 11), Defendants' instant Motion for Leave

is both premature and, as yet, unnecessary.  To the extent that Defendants' Motion for Leave is

based upon their concern about deposing these four non-party foreign nationals within the current

extended discovery period, the Court should not permit Defendants any additional time or otherwise

hold Plaintiffs to account for delays or decisions that are entirely of Defendants' own making, such

as Defendants' gamble in deciding to forgo international service of process to obtain these non-party

---

A document filed electronically shall be deemed filed at the time and date stated on the Notice of Electronic Filing (NEF) received from the court.  Local CM/ECF Administrative Procedure D(2).  Transmission of the NEF through the court's transmission facilities will constitute service of the filed document upon a registered ECF user and shall be deemed to satisfy the requirements of Fed. R. Civ. P. 5(b)(2)(D).  Local CM/ECF Administrative Procedure E(3).  Service by electronic means shall be treated the same as service by mail for the purpose of adding three (3) days to the prescribed period to respond.  In accordance with Local Rule 7.1, a party opposing a motion shall file an opposition to the motion within fourteen (14) days after service of the motion.  Local CM/ECF Administrative Procedure E(4)

Defendants filed their Motion to Compel at 6:07 PM, EST on July 17, 2008.  They filed their supporting memorandum of law and declaration at 6:08 and 6:12, respectively. (The three official Notices of Electronic Filings received from the court are attached at **Exhibit K**).  Thus, under the Local CM/ECF Administrative Procedures, Defendants' Motion to Compel was not officially filed and served until July 18, 2008, requiring Plaintiffs to file an opposition thereto within 14 days after service; that is, on or before August 1, 2008.

depositions. Plaintiffs therefore respectfully request that the Court deny Defendants' Motion for

Leave and enter an Order awarding Plaintiffs their reasonable fees and costs associated with

responding to Defendants' Motion.

**IV.    Because Defendants Delayed Serving Their Request for Entry onto Land Until Very Late in the Extended Discovery Period, Plaintiffs Should Not Be Made the Victims of <u>Defendants' Failure to Timely Prosecute Their Discovery Requests.</u>**

Defendants' request that the Court grant them additional time to take discovery following

the resolution of their vague and expansive request for unfettered access onto lands located in the

Dominican Republic is improper as Plaintiffs have not yet served their Objections upon Defendants

(which are not due until August 8, 2008) and Defendants have filed no motion to compel. Any

perceived urgency requiring the Court to now rule on Defendants' request—which Defendants

made very late in the extended discovery period—is a "crisis" of Defendants' own making that

Plaintiffs should not be required to bear. Defendants have resorted to this desperation tactic due to

their own failure to timely raise this issue with Plaintiffs, which could have been raised much earlier

within the original discovery period or even the extended discovery period. Instead, Defendants

waited until July 9, 2008, to serve their request for entry onto land, just 33 days before the close of

discovery, knowing full well that Plaintiffs have 30 days to respond under the Rules.

Even assuming, however, that Defendants' request for entry onto land were properly before

the Court via a motion to compel—which it is not—Defendants' request for unfettered access to

unspecified lands should be denied because it is overly broad, vague, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Moreover, the Rules impose a

heightened burden upon parties seeking entry onto land as opposed to other forms of discovery,

which Defendants have fallen far short of satisfying. Indeed, in their request Defendants suggest no

reason as to why this form of discovery is needed at all. Prior to releasing *POS*, Defendants made

numerous trips to the Dominican Republic, including trips to bateyes and lands owned by Vicini-

affiliated companies, during which they amassed hundreds of hours of video shot during those trips and thousands of photographs.  Surely, had Defendants believed that additional "inspections" of those lands were necessary to defend this lawsuit—and it defies logic how an inspection of *current* conditions could possibly be relevant to conditions that existed more than two years ago—Defendants could have, and should have, made their request to Plaintiffs earlier in the discovery period.  Plaintiffs intend to set forth their objections to Defendants' request for entry onto land more fully in their formal written Objections which are due on August 8, 2008, or an earlier date if ordered by the Court.[2]

Regardless, Plaintiffs should not be made the victims of Defendants' failure to timely prosecute their discovery requests and have the discovery cut-off extended yet another time to accommodate Defendants' unexcused delays.  Accordingly, the Court should deny Defendants' Motion for Leave and award Plaintiffs their reasonable fees and costs associated with responding to this Motion.

## Conclusion

Based upon the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion for Leave and award Plaintiffs their reasonable fees and costs associated with having to respond.

Respectfully submitted,

/s/ Nigel Wilkinson
Read K. McCaffrey (admitted *pro hac vice*)
Stephen Diaz Gavin (admitted *pro hac vice*)
Benjamin G. Chew (admitted *pro hac vice*)
Nigel L. Wilkinson (admitted *pro hac vice*)
PATTON BOGGS LLP
2550 M St, N.W.

---

[2] To suggest somehow that Plaintiffs have done anything wrong because they are following the Rules permitting them 30 days to respond to Defendants' much-belated discovery request is utterly absurd.  *See* Motion for Leave at 4 ("Plaintiffs have refused to discuss defendants' request or to advise defendants prior to August 8 (when their formal response is due) whether they intend to permit, or will object to, the August 11 inspection.").

Washington, DC 20037
Telephone:  (202) 457-6015
Facsimile:  (202) 457-6315
e-mail:  rmccaffrey@pattonboggs.com

Jessica Block
BLOCK & ROOS LLP
60 State Street, Suite 3800
Boston, MA 02109
617-223-1900
Fax: 617-227-1948
Email: block@blockroos.com

Counsel for Plaintiffs
Felipe Vicini Lluberes
and Juan Vicini Lluberes

Dated:  July 28, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2008, the foregoing Response to

Defendants' Motion for Leave to Take Discovery Out of Time was filed with the Court via its

CM/ECF system, and will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF), and served via first class mail, postage prepaid, upon the

following:

Elizabeth C. Koch (admitted *pro hac vice)*
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1050 Seventeenth Street, N.W.
Washington, D.C.  20036
Telephone:  (202) 508-1100
Facsimile:  (202) 861-9888
E-mail:  bkoch@lskslaw.com

Counsel for Defendants
Uncommon Productions, LLC
and William M. Haney, III

      /s/ Nigel L. Wilkinson
Nigel L. Wilkinson (admitted *pro hac vice)*